**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
_____ X

Paul Marsico

                                **Plaintiff**

  -against-

NCO Financial Systems, Inc.

                              **Defendant**
_____ X

**Docket No.  12 –CV- 6220**
**(ADS)(WDW)**


**Plaintiff's Memorandum of Law in Opposition to**
**Defendant's Motion to Dismiss**

## TABLE OF CONTENTS

**Introduction**……………………………………………………………………….………… 1

I.    **Statement of Facts** ………………………………………………….......... 2

II.    **Standard of Review** …………….…………………………… ………………… 3

III.    **The Fair Debt Collection Practices Act is a Strict Liability Consumer Protection Statute that Should be Read Liberally to Protect Consumers** …..…………………………………….………... 3

IV.    **There is No "Intent" or "Knowledge" Requirement Under 15 USC 1692c(b)** …………………………………………………… 5

    **A**.  Plain Meaning of 15 USC 1692c(b) …................................................. 5

    **B.**  Creating an "Intent" or "Knowledge" Requirement would be Contrary to the Plain Meaning of 15 USC 1692c(b) and Would Eviscerate Congressional Intent ……………….…………….......................................... 9

V.    **Defendant's "Rock and Hard Place" Argument** ……..…………………….............. 10

VI.    **Cases Cited By Defendant** …………………….…………………………….....13

VII.    **Defendant's Blunderbuss Approach to Robo-Dialing** …………………………… 17

VIII.  **Defendant Violates Their Own Suggested Reading of the Act** ……….……… 20

IX.    **Congressional Intent and Defendant's Letter Analogy**………..……………….... 21

**Conclusion** ……………………………………………………………….….... 23

**Introduction**

Defendant is a debt collector who uses automated telephone calling/messaging equipment to blindly leave pre-recorded debt collection messages for consumers on telephone answering machines while aware that others may be listening to the messages. The messages announce that the Defendant is a debt collector trying to collect money.

Plaintiff alleges that the Defendant consistently left a pre-recorded debt collection message on his answering machine located within his residence. Plaintiff alleges that while the Defendant was leaving their messages, the messages were audible to anyone within listening distance of the answering machine. Plaintiff alleges that on at least one such occasion, the Plaintiff's mother-in-law was in the same room with the answering machine and listened as Defendant broadcasted the message. Plaintiff was embarrassed and humiliated.

Defendant seeks a ruling from this court authorizing them to continue using their automated calling/messaging equipment to blindly broadcast debt collection calls over answering machines without any regard for who is listening. The Defendant wants the Court to declare this inherently risky practice "legal," so that they can continue to use their robo-calling equipment with immunity.

Defendant's argument simply ignores the strict liability aspect of the Fair Debt Collection Practices Act (15 USC 1692 et seq).  The Defendant wants the Court to engraft a "knowledge" or "intent" requirement into 15 USC 1692c(b) even though the statute specifically says otherwise. Defendant wants the Court to rule that before Plaintiff can establish a claim under 15 USC 1692c(b), the Plaintiff has to prove that the Defendant had the "intent" to disclose the debt to a third party, or that the Defendant had the actual "knowledge" that a third party was actually listening. Defendant's practice violates the Fair Debt Collection Practices Act 15 USC 1692c(b).

1

The FDCPA is a strict liability statute, and unlike other specific sections of the FDCPA,

1692c(b) *does not* include an exception to this strict liability scheme. There is no "knowledge" or

"intent" requirement under 15 USC 1692c(b). The Plaintiff has sued the Defendant for violating

15 USC 1692c(b) in that the Defendant improperly disclosed to the Plaintiff's mother-in-law that

it was debt collector attempting to collect a debt.

## I. <u>Statement of Facts</u>

Defendant is a debt collector who was collecting a debt that Defendant alleges Plaintiff

owes. In an attempt to collect this alleged debt, the Defendant used automated telephone

dialing/messaging equipment to repeatedly leave a pre-recorded debt collection message on

Plaintiff's answering machine located in the Plaintiff's residence. The Plaintiff has alleged that

before calling the Plaintiff's answering machine, the Defendant was aware that people other than

the Plaintiff may be listening to the answering machine. (*Amended Complaint, paragraph  12,*

*13*).   Plaintiff has alleged that Defendant chose to take the risk of leaving the messages.

Following is the pre-recorded message that Defendant repeatedly left:

> *This is an important message from NCO Financial Systems, Inc. The law requires that we*
> *notify you that this is a debt collection company. This is an attempt to collect a debt and*
> *any information obtained will be used for that purpose. Please call Mack Harris today at*
> *800 -883-0613. Once again that number is 800- 883-0613. Thank you.*

While the Defendant was leaving the above quoted pre-recorded message on Plaintiff's

answering machine, the message was being broadcasted aloud over the answering machine's

speaker so that anyone within range of the answering machine could hear the message.

Plaintiff's mother-in-law was present in the room with the answering machine on at least one

such occasion and listened to the message as it was being broadcasted. Plaintiff's mother-in-law

knew that said message was intended for the Plaintiff because it was left on the Plaintiff's

answering machine, and there is nobody else at the residence for who it could have been

intended. Plaintiff (and Plaintiff's wife) are the only people who regularly utilize the telephone

answering machine. [15 USC 1692c treats husband and wife as one. See 15 USC 692c(d)]

Plaintiff was embarrassed and humiliated that his mother-in-law learned that he had a debt

collector pursuing him.


## II. <u>Standard of Review</u>

In determining a motion to dismiss under Federal Rule of Civil Procedure 2(b)(6), the

Court should accept all factual allegations in the complaint as true and draw all reasonable

inferences in the plaintiff's favor. *See Roth v. Jennings*, 489 F.3d 499, 501 (2d Cir. 2007).


## III. <u>The Fair Debt Collection Practices Act is a Strict Liability Consumer Protection Statute that Should be Read Liberally to Protect Consumers</u>

The Plaintiff's claim is brought pursuant to the Fair Debt Collection Practices Act

(FDCPA). 15 USC § 1692, *et seq*. The FDCPA is a strict liability statute. *Ellis v. Solomon &*

*Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. Conn. 2010); *Bentley v. Great Lakes Collection*

*Bureau, Inc.*, 6 F.3d 60, 63 (2d Cir. 1993). *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135

(2d Cir. Conn. 2010):

> To recover damages under  the FDCPA, a consumer does not need to show intentional
> conduct on the part of the debt collector. The Act "is a strict liability statute, and the
> degree of a defendant's culpability may only be considered in computing damages."
> *Bentley v. Great Lakes Collection Bureau, Inc*., 6 F.3d 60, 63 (2d Cir. 1993) (internal
> citation omitted) (citing *Clomon*, 988 F.2d at 1320; 15 U.S.C. § 1692k(b)).

To establish a violation of the FDCPA, the intent of the Defendant is irrelevant. *Ellis*, 135.  The Plaintiff merely needs to show that the Defendant is a debt collector who was collecting a debt when the FDCPA violation occurred. Because the FDCPA is a strict liability statute, there are no unimportant violations. *Bentley v. Great Lakes Collection Bureau, Inc*., 6 F. 3d 60, 63 (2d. Cir 1993)   Proof of one violation is sufficient to support recovery under the statute. *Id*.

Additionally, "(b)ecause it is designed to protect consumers, the FDCPA is, in general, liberally construed in favor of consumers to effect its purpose." *Blair v. Sherman Acquisition*, No. 04 Civ 4718, 2004 WL 2870080 at 2 (N.D. Ill. Dec.13, 2004) as quoted in *Foti v. NCO Financial Systems*, 424 F. Supp. 2d. 655 (SDNY 2006); *Jacobson v. Healthcare Fin. Servs*., 516 F.3d 85, 95 (2d Cir. N.Y. 2008)("(T)he Act is primarily a consumer protection statute, and we have consistently interpreted the statute with that congressional object in mind"); *Villari v. Performance Capital Mgmt.*, 1998 U.S. Dist. LEXIS 11128, 5-6 (S.D.N.Y. July 21, 1998) ["The FDCPA is remedial in nature and should be liberally construed. *Pipiles v. Credit Bureau of Lockport, Inc*., 886 F.2d 22, 27 (2d Cir. 1989)"; *Leyse v. Corporate Collection Servs*., 2006 U.S. Dist. LEXIS 67719, 16-18 (S.D.N.Y. Sept. 18, 2006). (noting this liberal standard in the context of answering machine messages by debt collectors).

Individual privacy was one of Congresses stated purposes for passing the FDCPA. *15 USC 1692(a)*.  The Act's strict liability scheme is to assure that collectors are very careful in their pursuits.

As part of the strict liability scheme, the FDCPA provides an affirmative defense for violations committed due to a "bona fide error." *15 USC 1692k(c)*.  In order to establish this

defense a defendant needs to show that the error was unintentional and that they had procedures in place that were reasonably adapted to avoid the error. *Id.*

## IV.  <u>There is No Intent or Knowledge Requirement under 15 USC 1692c(b)</u>

Defendant is arguing that in order for Plaintiff to state a claim under 15 USC 1692c(b), Plaintiff must allege that the Defendant had an intention to disclose the debt to a third party, or have definitive "knowledge" that a third party was listening.  Put simply, that is just not what the FDCPA says.  The particular provision of the FDCPA at issue does not contain such an "intent" or "knowledge" requirement. As noted above, the FDCPA is generally a strict liability statute. *Ellis*, 135.  The FDCPA contains numerous prescriptions and proscriptions regulating debt collector conduct.  A few of these provisions actually <u>*do have*</u> a "knowledge" or "intent" requirement. [See eg. 15 USC 1692c(a);  15 USC 1692d(5); and 15  USC1692e(8)].   But 15 USC 1692c(b) *does not*.    The statute and the Second Circuit authority could not be clearer, 15 USC 1692c(b) is a strict liability provision.

### A. <u>Plain Meaning of 15 USC 1692c(b)</u>

Section 1692c(b) states:

> **[W]ithout the prior consent** of the consumer given **directly to the debt collector**, . . . a debt collector **may not communicate, in connection with the collection of any debt**, *with any person other than the consumer*, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.  (emphasis added)

It is axiomatic that "statutory construction begins and ends with the language of the statute if the language is unambiguous. See *United States v. Snype*, 441 F.3d 119, 144 (2d Cir.

5

N.Y. 2006)(citing, *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450, 122 S. Ct. 941, 151 L. Ed. 2d 908 (2002) and *Virgilio v. City of New York*, 407 F.3d 105, 112 (2d Cir. 2005).   There is nothing ambiguous about this provision.

The plain meaning of 1692c(b) is that a debt collector cannot communicate with anyone except the consumer in connection with the attempt to collect the debt, unless the consumer consents to such.  The provision unambiguously does not contain an "intent" or "knowledge" requirement.

The Plaintiff has plead all the necessary elements of a claim under 15 USC 1692c(b). The Defendant's message was obviously ***"in connection with the collection of any debt".***  The message itself says such ("This is an attempt to collect a debt…"), and the parties have no other relationship.  The parties agree that the message is a ***communication*** (See Defendant's Memo pages 4-5). The FDCPA defines communication as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2)  Debt collection messages left on answering machines are clearly communications See *Leyse v. Corporate Collection Servs.*, 2006 U.S. Dist. LEXIS 67719, 16-18 (S.D.N.Y. Sept. 18, 2006); *Foti v. NCO Fin. Sys.*, 424 F. Supp. 2d 643, 658 (S.D.N.Y. 2006), and *Cerrato v. Solomon & Solomon*, 2012 U.S. Dist. LEXIS 179132, 16-17 (D. Conn. Dec. 18, 2012).   Finally, the Plaintiff never ***consented*** to Defendant speaking to his mother-in-law; Defendant is not even alleging such.  The Defendant called the Plaintiff's answering machine and left a message that informed the Plaintiff's mother-in-law that they were a debt collector attempting to collect a debt.  The Defendant violated the plain meaning of the statute.

This plain-language reading of the § 1692c(b) comports with the FDCPA's goal of protecting consumers, and the Second Circuit's approach of liberally construing the statute to

6

reach that goal. [See *Jacobson v. Healthcare Fin. Servs*., 516 F.3d 85, 95 (2d Cir. N.Y. 2008);

*Pipiles v. Credit Bureau of Lockport, Inc*., 886 F.2d 22, 27 (2d Cir. 1989); *Leyse v.*, 2006 U.S.

Dist. LEXIS 67719, 16-18 (S.D.N.Y. 2006)].

      There are a number of cases addressing the issue of whether a message left on a

consumer's answering machine, but heard by third-parties, violates 15 USC 1692c(b).

Defendant properly identifies *Berg v. Merchants Assoc. Collection Div., Inc*., 586 F.Supp.2d

1336 (S.D.Fla. 2008) as the leading case on the issue.  Relying on the plain meaning of the

statute, the Court in *Berg*, found that a voicemail message that was overheard by a third party

violated § 1692c(b).  The facts of *Berg* and the instant matter are identical in all material ways.

In both cases the consumer alleged that the debt collection message was left on their answering

machine but heard by a third party. Both the Plaintiff herein as well as the consumer in *Berg,*

alleged that the debt collector knew or should have known that the message may be heard by a

person other than the consumer.  Defendant attempts to distinguish *Berg* in two ways. First the

Defendant incorrectly informs the Court that the Plaintiff herein has not alleged that the

Defendant knew or should have known that their answering machine message may be heard by a

third party. While this is likely irrelevant due to the strict liability aspect of the FDCPA, the

Plaintiff has in fact alleged such.  (*See Amended Complaint, Paragraphs, 12-13, 21*).  The

Defendant also tries to distinguish *Berg* by suggesting that the Plaintiff's mother-in-law in the

instant matter would not be able to discern from the Defendant's message that a debt collector

was calling her son-in law. This purported distinction defies common sense. Clearly Plaintiff's

mother-in-law listening to the Defendant's message left on Plaintiff's answering machine would

believe a debt collector was calling Plaintiff. (As in fact, they were.)  Defendant's message said

they were a debt collector, collecting a debt, and asked for the recipient to call them back.

7

Considering Defendant's message was being left on the Plaintiff's answering machine, it hardly seems unreasonable that Plaintiff's mother-in-law (correctly) concluded that the message was for her son-in-law. Even if Defendant can posit other possible reasons a debt collector would leave such an automated message on her son-in law's answering machines, she didn't. Plaintiff has alleged that Plaintiff's mother-in-law correctly concluded from the message that a debt collector was trying to collect money from the Plaintiff.  This, in fact appears to be the *only realistic* and reasonable conclusion.

In *Leahey v. Franklin Collection Service, Inc.*, 756 F. Supp. 2d 1322 (N.D. Ala. 2010) a case also virtually identical to the instant matter, the U.S. District Court for the Northern District of Alabama reached the same conclusion as the court in *Berg*. In *Leahey*, the plaintiff's speakerphone answering machine was located in his living room and he was in his bedroom at the time a message was left announcing that a debt collector was calling in connection with the collection of a debt.  The plaintiff's friend, who was in the living room at the time, heard the message as it was being left.  Even though there is no evidence in the *Leahey* decision that the debt collector knew or should have known that the answering machine was on speakerphone mode, the court held that "[u]nder the plain language of the statute, 'without the prior consent of the consumer given directly to the debt collector, . . . a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer."  Id  Numerous other courts have held that 15 USC 1692 c(b) does not have an intent requirement, and that debt collectors must comply with 1692c(b) when leaving a message on a consumer's answering machine. See: *Cordes v. Frederick J. Hanna & Assocs., P.C.*, 789 F. Supp. 2d 1173, 1176-1177 (D. Minn. 2011); *Zortman v. J.C. Christensen & Assocs.*, 819 F. Supp. 2d 874 (D. Minn. 2011)(Summary judgment for Defendant granted by *Zortman v. J.C. Christensen &*

8

*Assocs.*, 2012 U.S. Dist. LEXIS 61122 (D. Minn., May 2, 2012); *Hoover v. Monarch Recovery*

*Mgmt.*, 2012 U.S. Dist. LEXIS 120948, 28-30 (E.D. Pa. Aug. 24, 2012); *Branco v. Credit*

*Collection Servs.*, 2011 U.S. Dist. LEXIS 94077, 15-17 (E.D. Cal. Aug. 23, 2011); *FTC v. Check*

*Enforcement*, 2005 U.S. Dist. LEXIS 34349 (D.N.J. July 15, 2005).


**B. Creating an "Intent" or "Knowledge" Requirement would be Contrary to the Plain Meaning of 15 USC 1692c(b) and Would Eviscerate Congressional Intent**


When analyzing § 1692c, closely it is readily apparent that subsection 1692c(b) does not

contain a "intent" or "knowledge" requirement. Congress broke § 1692c down into four

subsections: (a) Communication with the consumer generally, (b) Communication with third

parties, (c) Ceasing communication, and (d) Definitions.  Only subsection § 1692c(a) has a

knowledge requirement. Pursuant to § 1692c(a), a debt collector is not allowed to communicate

with a consumer at "(1) at any unusual time or place or a time or place ***known or which should***

***be known*** to be inconvenient to the consumer"; "(2) if the consumer ***knows*** the consumer is

represented by an attorney with respect to such debt and ***has knowledge of, or can readily***

***ascertain***, such attorney's name and address . . . ."; or "(3) at the consumer's place of

employment if the debt collector ***knows or has reason to know*** that the consumer's employer

prohibits the consumer from receiving such communication."  No other subsection of § 1692c –

including § 1692c(b) governing "Communication with third parties" – contains even a hint of a

"knowledge" or "intent" requirement. Congress took care to specify which sections of the

FDCPA required knowing or intentional conduct; 1962c(b) is not one of those provisions.  Other

specific subsections of the FDCPA also contain "knowledge" or "intent" requirements.  As noted

in *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1176 n. 11 (9th Cir. 2006),

Congress was careful in specifying which sections required such, and which did not:

> As thoroughly discussed in *Kaplan v. Assetcare, Inc.*, 88 F. Supp.2d 1355 (S.D.
> Fla. 2000), that "Congress took care to require an element of knowledge or intent
> in certain portions of the FDCPA where it deemed such a requirement necessary"
> further supports our conclusion that § 1692k(c) generally makes the FDCPA a
> strict liability statute. *Id.* at 1362; *see, e.g.*, 15 U.S.C. § 1692d(5) ("Causing a
> telephone to ring or engaging any person in telephone conversation repeatedly or
> continuously *with intent to* annoy, abuse, or harass any person at the called
> number.") (emphasis added); 15 U.S.C. § 1692f(3) ("The solicitation of a debt
> collector of any postdated check . . . *for the purpose of* threatening or instituting
> criminal prosecution.") (emphasis added); 15 U.S.C. § 1692c ("a debt collector
> may not communicate with a consumer in connection with the collection of any
> debt at any unusual time or place . . . *known or which should be known* to be
> inconvenient to the consumer.") (emphasis added). Here, we are persuaded that
> Congress employed such specific qualifiers to limit the more general language of
> § 1692k. *See Hearn*, 68 F.3d at 304.

Defendant's request for the Court to engraft a "knowledge" or "intent"

requirement is facially improper. Clearly Congress knows how to include a "knowledge"

or "intent" requirement, they did so in subsection 1692c(a) as well as other provisions of

the Act.  The FDCPA is a strict liability statute, with a few exceptions where Congress

included the "intent" or "knowledge" requirement.  To arbitrarily imply additional

exceptions into the statute would violate the long standing canon of statutory

interpretations prohibiting such. *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616-617

(U.S. 1980)("Where Congress explicitly enumerates certain exceptions to a general

prohibition, additional exceptions are not to be implied, in the absence of evidence of a

contrary legislative intent.")    Defendant is asking for the Court to re-write 1692c(b) so

as to aid them in their business endeavors.  Defendant's request should be denied.

## V. **Defendant's "Rock and a Hard Place" Argument**

Defendant argues that the FDCPA puts debt collectors in an untenable situation. That assertion is factually wrong, and legally irrelevant.

Defendant argues that it is impossible for them to comply with the FDCPA. Defendant argues that 15 USC 1692e(11) requires that they inform a consumer in every message that they are a debt collector, but if they leave such a message on a consumer's answering machine that a third party may be listening and they would violate 15 USC 1692c(b). The Defendant then concludes that this mandates that the Court allow the Defendant to violate 15 USC 1692c(b) so that they can use their robo-callers to leave the 1692e(11) notice on answering machines. But Defendant's basic premise that they have no other options is just not true. Defendant argument ignores that Debt collectors have other ways to communicate with consumers. (most notably, they can call and speak directly to consumers, and/or they can send letters). See, *Gryzbowski v. I.C. Sys.*, 691 F. Supp. 2d 618, 623 (M.D. Pa. 2010); *Chalik v. Westport Recovery Corp.*, 677 F. Supp. 2d 1322, 1328 (S.D. Fla. 2009); *Berg*, 586 F. Supp. at 1344.

Additionally, and in any event, Defendant is not foreclosed from leaving messages on answering machines. Defendant's argument ignores that 15 USC 1692c(b) contains a specific provision that allows debt collectors to communicate with third parties *with the consumer's consent*. If Defendant wants to leave messages on the Defendant's answering machine, they can do so after obtaining the Plaintiff's consent. Defendant can call the consumer and ask them directly if they are permitted to leave messages on the consumer's answering machine. If they can't reach the consumer via phone, they can send the consumer a letter asking for such consent. If the consumer grants the requested consent, then the debt collector could leave messages.

11

From a legal standpoint, however, the Defendant's argument is irrelevant. As the Defendant themselves have pointed out, debt collectors do not any inherent right to use any particular way of trying to collect a debt. (*Defendant's memo, pages 5-6*).   The Defendant of course has to comply with <u>all</u> provisions of the FDCPA, and as detailed above it is certainly possible to do so. The fact that it may not fit perfectly within the Defendant's business model is, of course, of no moment. *Clomon v. Jackson*, 988 F.2d 1314, 1321 (2d Cir. Conn. 1993).   The Defendant's "rock and hard place" argument has been roundly rejected by the Courts. *Foti*, 424 F. Supp. 2d., 659-660 (S.D.N.Y. 2006); *Leyse*, 2006 U.S. Dist. LEXIS 67719 (S.D.N.Y. Sept. 18, 2006);  *Edwards v. Niagara Credit Solutions, Inc*., 584 F.3d 1350 (11th Cir. Ga. 2009); *Berg*, 586 F. Supp. at 1344; *Sclafani v. BC Servs*., 2010 U.S. Dist. LEXIS 115330, 7-8 (S.D. Fla. Oct. 18, 2010); *Baker v. Allstate Fin. Servs*., 554 F. Supp. 2d 945, 950 (D. Minn. 2008)   The Eleventh Circuit in *Edwards* summarized this issue as follows:

> Just as it is not reasonable to destroy a village in order to save it, neither is it reasonable to violate an Act in order to comply with it. It was not reasonable for Niagara to violate § 1692e(11) of the Fair Debt Collection Practices Act with every message it left in order to avoid the possibility that some of those messages might lead to a violation of § 1692c(b). *Edwards*, at 1353-1354 (11th Cir. Ga. 2009)

Defendant argues that because they are obligated to comply with 15 USC 1692e(11) they should not have to comply with 15 USC 1692c(b). The Court should reject this argument for obvious reasons, i.e. the FDCPA says debt collectors must comply with <u>all</u> of the provisions.   But Defendant's argument should also be rejected as it is a non-sequitur.  Defendant presents the problem as an inability to comply with both the notice provisions of the Act, 15 USC 1692e(11),  and the privacy provisions of the Act, 15 USC 1692c(b).  Defendant's suggested remedy is for the Court to inject an "intent" or "knowledge" requirement into 1692c(b).  But the proposed remedy does not

fix the alleged problem. Taking the Defendant at their word, they want to be able to

provide consumers with the notice under 15 USC 1692e(11) in a way that does not

invade the consumer's privacy. But, permitting debt collectors to blindly leave the

1692e(11) notice on answering machines does not fix the problem. The only thing the

Defendant's proposed "fix" does is effectively immunize the Defendant. The "fix" won't

assure consumers' privacy won't be invaded. In fact it will almost assuredly make the

matter worse as the debt collectors will feel at liberty to leave the message on any

answering machine they want.  Defendant's proposed remedy merely shifts the burden to

Plaintiff to prove a purposeful or knowing violation. The remedy does not fix the _alleged_

conflict between two provisions of the FDCPA;  it merely "fixes" the problem that

1692c(b) is causing to the Defendant's desired business model.


## VI. Cases Cited By Defendant

Defendant cites three cases in support of their argument. _Mostiller v. Chase Asset
Recovery Corp._, 2010 U.S. Dist. LEXIS 5208 (W.D.N.Y. Jan. 22, 2010); _Zortman v. J.C.
Christensen & Assocs._, 870 F. Supp. 2d 694 (D. Minn. 2012); and _Fashakin v. Nextel Communs._,
2009 U.S. Dist. LEXIS 25140 (E.D.N.Y. Mar. 25, 2009).   All three cases are easily
distinguishable and/or incorrectly presented.

In _Mostiller_, the Court ruled that the Plaintiff was not entitled to actual damages for the
Defendant's having left a debt collection message on an answering machine which was heard by
the consumer's fiancée. The Court did however note that the Plaintiff failed to allege that the
Defendant "knew or could anticipate reasonably that her fiancée lived with her." In the instant
case, Plaintiff has pled that the Defendant knew when they left the message it may be overheard

13

by a third party. (*See Plaintiff's Amended Complaint, paragraphs 12-13, 21*) Additionally, the

*Mostiller* decision related only to whether the Plaintiff was entitled to damages for the third–

party disclosure on his answering machine. Courts deciding the Plaintiff's damages certainly do

have the discretion to consider the nature of the violation.

       The Court in  *Mostiller*, did not conduct any analysis of the strict liability aspect of the

FDCPA, or any analysis of 15 USC 1692c.  To the extent that *Mostiller* can be read to eliminate

the strict liability aspect of 15 USC 1692c(b) the Plaintiff very respectfully suggests that the case

was wrongly decided. See, *Travers v. Collecto, Inc*., 2013 U.S. Dist. LEXIS 324, 6-7 (D. Mass.

Jan. 2, 2013)(appearing to question whether *Mostiller* runs afoul of the Second Circuit strict

liability standard).   The Court in *Mostiller* relied exclusively upon dicta from three previous

cases: *Mark v. J.C. Christensen & Assocs., Inc.*, 2009 U.S. Dist. LEXIS 67724 (D. Minn. Aug. 4,

2009)(citing to *Joseph v. J.J. Mac Intyre Cos., L.L.C*., 281 F. Supp. 2d 1156, 1164 (N.D. Cal.

2003); and *Edwards v. Niagara Credit Solutions, Inc.*, 586 F. Supp. 2d 1346, 1363 (N.D. Ga.

2008).  None of these three cases were cases brought under 15 USC 1692c(b). The references to

1692c(b) in all three cases were  *dicta* in the truest sense of the word. All three of these cases

were brought by consumers complaining that they did not receive the notices required under 15

USC 1692e(11) and/or 15 USC 1692d(6).  The Defendants in these cases argued that if they had

left the required notices they risked violating 15 USC 1692c(b) (the other side of the "rock and

the hard place" argument.)  In all three of these cases, the Courts rejected the proposed defense

noting that the Defendant has to comply with both provisions of the Act. In addressing the

Defendants' proposed defense, each of these Courts also indicated in fleeting fashion that the

Defendant had not shown that leaving the required notices would violate 15 USC 1692c(b).

None of the three cases analyzed 1692c(b) in any manner, nor even considered the strict liability

aspect of the provision. The reference to 1692c(b) in *Edwards* was merely one sentence in which

the Court noted that it was not clear whether inadvertent disclosures were actionable under

1692c(b).  The dicta in *Mark* merely quoted to the dicta in *Joseph*.  The dicta in *Joseph* appears

to be limited to a fleeting one-sentence conclusion:

> As for third party communications, the legislatures' concern in enacting these provisions
> about privacy violations resulting from deliberate disclosure of the debtor's status to third
> parties such as the debtor's employer has far less applicability to phone calls made to the
> debtor's phone number at his or her residence for similar reasons.  *Joseph* at 1164.

The Courts in *Joseph*, *Mark*, and *Edwards* merely seemed to be attempting to assuage the debt-

collectors' concerns that they really were between "a rock and hard place." None of these cases

analyzed 1692c(b) because that is not what the case was about. It does not appear that <u>any Court</u>

has ever analyzed 1692c(b) and concluded that the provision contains an exception to the

FDCPA's strict liability scheme.

This history of unfortunate dictum originating in *Joseph*, and spreading to *Mark*,

*Edwards* as well as other cases, is detailed in *Zortman v. J.C. Christensen & Assocs.*, 870 F.

Supp. 2d 694 (D. Minn. 2012).  *Zortman* is the second case on which the Defendant herein relies.

In *Zortman*, the debt collector left a message on the Plaintiff's answering machine merely

indicating the name of the Defendant and that Defendant was a debt collector. The message <u>did</u>

<u>not</u> say that Defendant was collecting a debt. The message was overheard by the consumer's

children.  There are actually two *Zortman* decisions. First, the Defendant moved to dismiss the

case under Rule 12(b)(6).  This lead to the first *Zortman* decision in which the Court outright

rejected the Defendant's attempt to engraft an "intent" or "knowledge" requirement. *Zortman v.*

*J.C. Christensen & Assocs.*, 819 F. Supp. 2d 874, 880-881 (D. Minn. 2011).  Defendant then

moved to for summary judgment, and the Court granted Defendant's motion. While the Court

again concluded that 1692c(b) is a strict liability provision and does not contain an "intent" or "knowledge" provision, the Court on summary judgment ruled that under the specific facts of this case, Defendant had not communicated to a third party that the consumer owed a debt.  The message that was left on the consumer's machine <u>did not</u> indicate that the defendant was collecting a debt. It merely said that the Defendant was a debt collector. And coincidentally, the **consumer** in *Zortman* happened to also work as a debt collector. The Court concluded under these specific facts, there was no communication about the debt. The Court reasoned that because the message did not say it was an attempt to collect a debt, and because the Plaintiff's children may have believed that the message was related to the consumer's work, there had been no "communication" about the debt. Obviously, the facts of *Zortman* are markedly different than the instant matter. First, the message in the instant case clearly states that the Defendant is attempting to collect a debt, as such there can be no question why the caller was calling. Second, the Plaintiff in the instant matter does not work at as a debt collector, and has no other relationship with the Defendant.  And lastly, in line with the prevailing case law *Leyse*, 2006 U.S. Dist. LEXIS 67719, 16-18 (S.D.N.Y. Sept. 18, 2006); *Foti v. NCO Fin. Sys.*, 424 F. Supp. 2d 643, 658 (S.D.N.Y. 2006), and *Cerrato v. Solomon & Solomon*, 2012 U.S. Dist. LEXIS 179132, 16-17 (D. Conn. Dec. 18, 2012), the parties herein agree that the message in the instant matter was a "communication."  (*Defendant's Memo, pages 4-5)* The *Zortman* decisions do not help the Defendant. The *Zortman* cases confirm that 15 USC 1692c(b) is a strict liability provision.

Defendant's memo also refers to the Court's decision in *Fashakin v. Nextel Communs.*, 2009 U.S. Dist. LEXIS 25140 (E.D.N.Y. Mar. 25, 2009).  *Fashakin* also supports Plaintiff's argument. In *Fashakin*  the Court analyzed the elements of each subsection under 15 USC 1692c

and correctly noted which subsections contain a knowledge requirement and which did not. First, the Court found no evidence of calls outside the time period allowed under § 1692c(a)(1). Next, she correctly observed that § 1692c(a)(3) prohibits communications at work only if the debt collector "knows or has reason to know" that the consumer's employer prohibits such communication. Finding that the plaintiff had not made such a showing, the Court granted summary judgment dismissing the violation. Finally, the Court analyzed the plaintiff's claims of impermissible statements to third-parties. The Plaintiff had alleged that "Allied violated § 1692c(b) by telling office receptionists that plaintiff owed a debt to Nextel and that she would be reported to the National Credit Bureau, with resultant damage to her credit, if she did not pay." The Court noted that:  "***Such allegations, if true, would violate the FDCPA***."  But instead of submitting ***admissible*** evidence – *i.e.* affidavits – from her receptionists, the Plaintiff only opposed the debt collector's motion for summary judgment with "her own affidavit relating statements allegedly made to her receptionists." Nowhere in her decision did the Court even hint that  §1692c(b) required a consumer to show that that a debt collector knew it was making improper third-party disclosures. On the contrary, before dismissing the claims on evidentiary grounds, the Court noted that if true, Allied's actions violated §1692c(b).

The Defendant does not cite to any other authority to support their position.


## VII. <u>Defendant's Blunderbuss Approach to Robo-Calling</u>

Defendant's messages identified that they were a debt collector attempting to collect a debt.  Defendant proposes they should be immunized from liability because the message did not include the Plaintiff's name.  The fact that they did not state the Plaintiff's name in the message is irrelevant considering Defendant left the message on Plaintiff's answering machine in the

Plaintiff's residence, and the Plaintiff's mother-in-law knew who the message was for. Defendant's proposed loophole would not only ignore common sense, but would eviscerate the purpose of 15 USC 1692c(b); namely to protect consumers from the embarrassment of third parties learning that a debt collector is after them. The impact of Defendant's conduct is that the Plaintiff was humiliated in front of his mother-in-law for not being able to pay an alleged debt. The Defendant argues that Plaintiff should not have been embarrassed or humiliated because Defendant didn't specifically state the Plaintiff's name. But this argument ignores the rather obvious fact that a message left on an answer machine is intended for the person who uses that answering machine.  In fact, the Defendant's argument further evinces the danger and irresponsible nature of Defendant's blunderbuss robo-calling campaigns.  What if the Plaintiff was NOT in fact the intended recipient?   Then the Plaintiff would have been embarrassed and humiliated regarding a debt for which he was not even allegedly responsible.  The *impact* of the Defendant's message would be the same; the Plaintiff's mother-in-law would have heard the message and (wrongly) concluded that Plaintiff owed a debt. The Defendant called Plaintiff's phone and announced that they were a debt collector collecting a debt. There is no other realistic or reasonable conclusion. The impact on the Plaintiff would be the same; he would still be embarrassed. But now he would also have to attempt to convince his mother-in-law that the message was not related to him (a tall order no doubt considering they called his phone).  The impact does not change even if the Plaintiff was not the intended recipient. In fact it could arguably be worse in that the Plaintiff would have been embarrassed over a debt that was not even his. This could actually constitute per se defamation in New York. [See generally, *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 185-186 (2d Cir. N.Y. 2000)].    The point is that Defendant's argument merely highlights the danger associated with blindly leaving automated

18

debt collection messages on answering machines.   The FDCPA strictly regulates debt collection

communications for a reason; it is a sensitive subject. Financial status is important socially; false

impressions matter.  Leaving generic debt collection messages on shared answering machines, or

on third parties' answering machines, creates false impressions. People should not have to

explain false suggestions of debt collection (or accurate suggestions for that matter) with

relatives or colleagues so that the Defendant can automate their business. Leaving a consumer's

name out of an automated debt collection messages does not solve the problem; it creates more

victims.

   In any event, it is unreasonable for Defendant to argue that in this case they should be

immunized because they didn't specifically say the Plaintiff's name. The Defendant left the

message on Plaintiff's answering machine in Plaintiff's residence, and Plaintiff's mother-in-law

knew it was attempt to collect a debt from the Plaintiff. (*Amended Complaint, paragraph 17*)

   Additionally, in a footnote, the Defendant fleetingly suggests that the FDCPA actually

<u>permits </u>them to tell Plaintiff's mother-in-law that they are a debt collector attempting to collect a

debt from Plaintiff. The Defendant argues that telling a third party that they are a debt collector

collecting a debt is okay as long as they don't give "any details" about the debt. (*Defendant's

Memo, page 12 footnote 3*)**.**  Defendant's message states: "*The law requires that we notify you

that this is a debt collection company. This is an attempt to collect a debt and any information

obtained will be used for that purpose.*"  Defendant suggests that this message does not reveal

"the existence" of a debt.  This argument appears frivolous. The message clearly does reference a

debt.  Additionally, the relevant provision, 15 USC 1692c(b) prohibits the Defendant from

communicating with any third party "in connection with the collection of the debt."  With certain

inapplicable exceptions, the Defendant is not allowed to communicate <u>at all</u> with a third party.

19

Defendant has been reminded of this in the past. See: *Smith v. NCO Fin. Sys.,* 2009 U.S. Dist. LEXIS 51576, 8-9, note 27 (E.D. Pa. June 12, 2009).   In any event, the message here clearly revealed the existence of a debt to Plaintiff's mother-in-law.


**VII**. **Defendant Violates Their Own Suggested Reading of the Act**

Plaintiff notes that even if the Court adopted the Defendant's request to inject a "knowledge" requirement into 1692c(b), the Defendant would still be liable in this case, because Defendant certainly knew that another person may be listening when they broadcasted their messages. It is common knowledge that people let other people into their home. People congregate. Plaintiff has alleged that Defendant had no reason to conclude that Plaintiff lived in isolation. The point is, that even if the FDCPA required the Plaintiff to allege that defendant "knew" that someone other than the consumer may hear the message, the Plaintiff has alleged such.

The two FTC decisions cited in *Berg*, and relied upon by Defendant (*Defendant's Memo page 7*) actually support Plaintiff's position in this regard. The first opinion cited by Defendant merely indicates that 15 USC 1692c(b) was intended to prevent collectors from embarrassing consumers in front of relatives, which is exactly what happened to the Plaintiff. The second opinion cited by Defendant suggests that a debt collector does not violate the provision when an eaves-dropper overhears a conversation unless the debt collector "has reason to anticipate the conversation will be overheard."  In this case, the Defendant certainly did have reason to anticipate that someone else may be hear their messages. To deny knowledge in this instance the Defendant would have to deny the common knowledge that people let other people into their homes.  It is clear that Defendant "could anticipate" that third parties may be listening to their

answering machine messages, because the Defendant has been sued for this exact conduct before.  (See, eg. *Triolo v. NCO Financial Systems, Inc*., No. 11-CV-6163 (E.D.N.Y.);   *Kraus v. NCO Financial Systems, Inc.*, No. 12-CV-4241 (E.D.N.Y.)   There is no doubt that the Defendant knows that other people may be listening to their messages.  In *Foti v. NCO Fin. Sys*., 424 F. Supp. 2d 643, 658-659 (S.D.N.Y. 2006), Defendant <u>acknowledged the risk</u> and actually <u>tried to use the risk</u> to get the Court to authorize them not to comply with 15 USC 1692e(11). (the flip side of the ruling they seek here)  The Court in *Foti*, ruled that NCO had to comply with <u>both</u> 15 USC 1692e(11) and 15 USC 1692c(b).  This is not a situation where the debt collector is talking to a consumer and a third party surreptitiously eavesdrops. In that situation, Defendant would likely have a bona fide error defense under 15 USC 1692k.   With answering machine messages, Defendant *knows* it is speaking to anyone and everyone within earshot of, or with access to, the answering machine.  Defendant knows the risk of leaving messages on answering machines. They have just made a business decision to take the risk.

## IX . <u>Congressional Intent and Defendant's Letter Analogy</u>

One of the stated purposes of the FDCPA was to protect consumer's privacy. (15 USC 1692(a).  Additionally, it is clear from 15 USC 1692b that Congress sought to protect consumers from non-purposeful disclosures as well as purposeful. Section 1692b(4) prohibits debt collectors from communicating via postcard.  Additionally, 15 USC 1692b(5) states that debt collectors shall

> not use any language or symbol on any envelope or in the contents of any communication effected by the mails or telegram that indicates that the debt collector is in the debt collection business or that the communication relates to the collection of a debt.   15 USC 1692b(5).

Both of these subsections of 15 USC 1692b show that Congress recognized that <u>the damage</u> caused by disclosure is the same regardless of the debt collector's intent. It is

respectfully submitted that it would make little sense to conclude that Congress was concerned about non-purposeful disclosures in written form, but approved of such in oral form. Nor is there any indication that Congress wanted to eliminate strict liability regarding oral disclosures. It seems beyond cavil that Congress clearly wanted debt collectors to be careful with their communications. Blindly leaving automated debt collection messages on answering machines hardly seems careful.

Defendant's Memo analogizes Plaintiff's argument to debt collector's obligations regarding collection letters.  Referring to Plaintiff's argument, the Defendant states:

> This is akin to unreasonably asserting that a collection agency should not be allowed to send sealed mail to a consumer's residence, because this too carries the risk of an inadvertent disclosure if someone other than the addressee were to open the letter.

The Defendant's analogy however is not complete.  What the Defendant's automated messages really are akin to is sending that sealed mail to the consumer's residence, but writing on the outside of the envelope that the letter is from a debt collector attempting to collect a debt (something the FDCPA specifically prohibits).  In the Defendant's analogy, the third party actively opens mail not addressed to them. But that is not analogous to a third party standing in a room and passively hearing the defendant broadcast a debt collection message. What would the Defendant have the third party do? Cover their ears?  To use Defendant analogy, the situation is far more akin to including a return address that stated that the sender was a debt collector attempting to collect the debt. In that construction, both the letter viewer and the answering machine listener are passive recipients of the communication.

The Court's analysis in *Owens v. Brachfeld*, 2008 U.S. Dist. LEXIS 102381 (N.D. Cal. Dec. 5, 2008) is helpful to analyze the Defendant's letter analogy. In *Owens,* the defendant debt

collector sent a dunning letter in an envelope with a window. The window revealed the existence

of the debt to anyone looking at the envelope. The Court in *Owens* ruled:

> Courts have found violations of this provision when information regarding the creditor or debt being collected is disclosed through an envelope window. *In re Hodges*, 342 B.R. 616, 625 (E.D. Bankr. Wash. 2006); *Shulick v. Credit Bureau Collection Servs.*, 2004 U.S. Dist. LEXIS 1552 at *3-4 (E.D. Pa. Feb. 3, 2004); see also FTC Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Processes Act, 53 Fed. Reg. 50,097-02 (1988)("A debt collector may not send a written message that is easily accessible to third parties. For example, he may not use a computerized billing statement that can be seen on the envelope itself."). On September 18, 2006 Defendants mailed to Owens a collection letter in an envelope that contained a window through which anyone could see the creditor and account number related to the consumer debt being collected, thereby violating the FDCPA.  *Id*, at 5-6

Defense counsel's envelope analogy actually supports Plaintiff's argument.

Defendant's conduct however is best analogized to a different fact pattern. Leaving an

automated debt collection message on an answering machine is best analogized to a debt

collector covering his eyes and ears, sticking his head into the window of a consumer's house,

and screaming: "*I'm a debt collector attempting to collect a debt!*"   That is exactly what an

automated answering machine message does.  It announces the message without any regard for

who happens to be listening. (eg. friends, business associates, neighbors, relatives, suitors, co-

workers, the consumer's boss, the consumer's children, etc.)   It is inherently risky to leave

automated debt collection messages on answering machines. *Berg*, 586 F. Supp. 2d 1336, 1343

(S.D. Fla. 2008).  Fully cognizant of this risk [See *Foti v. NCO Financial,* 424 F. Supp. 2d 643,

658-659 (S.D.N.Y. 2006)], and for its own business reasons, Defendant continues to take that

risk.  As the Court in *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996) reiterated:

> [I]n the general context of consumer protection – of which the Fair Debt Collection Practices Act is a part – it does not seem unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.  (citations and quotation marks omitted).

**<u>Conclusion</u>**

It is unreasonable for debt collectors to blindly leave automated debt collection messages on answering machines when it is common knowledge that someone other than the consumer may hear the messages.  Protecting consumer privacy is one of the fundamental goals of the FDCPA, and the FDCPA should be construed broadly to reach that goal.  Defendant's request to eliminate the strict liability aspect of 15 USC 1692c(b) should be denied.

March 4, 2013
West Islip, NY                /S/ <u>JOSEPH MAURO</u>
                         Joseph Mauro
                         The Law Office of Joseph Mauro, LLC
                         306 McCall Ave.
                         West Islip, NY 11795
                         **Attorney for Plaintiff**